FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 20 2025

KEVIN P. WEIMER, Clerk
By: MA Deputy Clerk

Elliot Boose
5375 Peachtree Industril BLVD
Norcross, GA 30092
Telephone: 678-650-3285
Email: casray1974@yahoo.com

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

ELLIOT BOOSE,

Plaintiff,

V.

ELON MUSK; X CORP. DOING BUSINESS IN GEORGIA AS X CORP., A NEVADA CORPORATION

Defendants.

Civil Action No. 1:24-cv-05650-TRJ

PLAINTIFF'S COMPLAINT FOR DAMAGES FOR

1. FRAUD
2. BREACH OFCONTRACT
3. FALSE ADVERTISING

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## STATEMENT OF CLAIM

Now comes Elliot Boose pro se ("Plaintiff") claimants herein, files this claim against the above-named Elon Musk and X Corp ("Defendants").

## FACTS

1. Plaintiff Elliot Boose is a resident of Gwinnett County, Georgia and is an openly gay, Black, male, cross-dresser, American author known for his innovative ideas, strategies and products implemented nationwide and internationally from 2005 to the present starting with winning international theme competition for previous hit show *America's Next Top Model Cycle 4* followed by subsequent ideas for Cycle 6, Cycle 7 and Cycle 18 used by Executive Producer and Supermodel Tyra Banks of Bankable Productions.

2. Following this achievement, Plaintiff's former employer GMAC used Plaintiff's idea to create the GM Gas Card which was promoted internationally starting in October 2005. The GM Gas Card gave customers $500 worth of gas in a gas card if a customer purchased a SUV or truck and resulted in the Chevy Trailblazer outselling the Ford Explorer for the first time in twenty years which was announced on NBC Nightly News in January 2006.

3. During this achievement, Plaintiff submitted a treatment for a reality competition game show to former CEO Bill Ford of Ford Motor Company, Bill Ford responded immediately by sending Plaintiff a letter thanking him for the treatment and advising Plaintiff he will contact Plaintiff if he creates the show.

4. The show was later created by Bill Ford without notifying Plaintiff and the show briefly ran on ESPN in 2007 until Plaintiff filed an Intentional Copyright Infringement lawsuit against Bill Ford which resulted in the show removed from ESPN.

5. After Plaintiff had gotten six ideas implemented nationwide and internationally, Plaintiff started submitting ideas and strategies to former President Bush such as the successful troop surge strategy in Iraq, extended presence in Iraq and incentives to increase troop number.

6. Plaintiff sent ideas and strategies to former President Obama including bringing Syrian refugees to the U.S., coalition of allied countries to fight Isis and police body cameras nationwide after Black teenager Mike Brown was shot and killed by a White policeman.

7. On March 19, 2020 Plaintiff emailed the White House and criticized for his intentional mismanagement of Covid-19 and pointed out President Trump did not initiate an international travel ban to prevent Covid-19 from coming to the United States. Six hour after Plaintiff sent the email, President Trump implemented a temporary international travel ban which was pointless since

President Trump should have implemented the international travel ban when the virus was only in Wuhan, China in November 2019.

8. In January 2021, Plaintiff emailed the White House and advised President Biden to allow immigrants to the U.S. in an effort to motivate them to become Democrat voters, in Fall of 2021 Plaintiff emailed the White House and gave reasons to mandate the Covid-19 vaccine, announce marijuana reclassification before the 2022 midterms, announce student loan forgiveness before the 2022 midterms, expedite marijuana reclassification/amnesty in February 2024 and valid reasons for President Biden to step down and give VP Kamala Harris the Democratic nomination which was submitted to the White House July 19, 2024. President Biden stepped down two days later and gave VP Harris the nomination. On July 21, 2024 after President Biden stepped down, Plaintiff emailed the White House again and gave VP Harris parameters for the selection of her vice president and those parameters happen to be the exact characteristics that her choice, Governor Walz, possesses.

9. Plaintiff also submitted several other successful and implemented ideas to two Atlanta, Georgia mayors (alcohol sales on Sundays - former Mayor Kasim Reed/bring an official to speak on behalf during 2018 runoff of former Mayor

Keisha Lance Bottoms), instant pay process for Lyft ride-share rental car drivers, former Republican Senator Perdue (Plaintiff advised him in 2014 President Obama was using his idea to bring Syrian refugees to the U.S. and place them in Republican dominated states to use them to become Democrat voters) and other ideas to other political candidates, CEOS and entertainers.

10. Plaintiff included a few of the aforementioned in his current e-book *Mr. President Elliot C. Boose New Edition*. The e-book also describes Plaintiff's intimate encounter with a celebrity comedian/actor which led to a set-up attack in September 2008 which left Plaintiff permanently disabled. Then, a subsequent insecticide poisoning by a singer who is an associate of the comedian/actor in April 2023 when the comedian/actor had a new movie released during the same month.

11. Plaintiff joined "X" (formerly Twitter) in November 2022 and did so reluctantly due to "X's owner, Defendant Elon Musk, is racists and homophobic and allows anyone, especially MAGA Republicans to constantly post lies, misinformation, racists epithets and propaganda with no categories to report lies, misinformation or propaganda. Plaintiff joined "X" so that he could promote

his e-book and circulate emails and other correspondence that proves his ideas, strategies and products were implemented shortly after they were submitted and Plaintiff's "X" handle @ElliotBoose2023 has been shadow banned which prevents other users from interacting with his page or posts which includes no or minimum engagements, "likes" or comments on his posts.

12. "X" Support shadow banned Plaintiff's "X" page without any notification or specific reason regarding alleged violations. Plaintiff contends "X" allows racists to post the word "nigger" and epithets against other races and allows all types of porn including illegal porn. Yet, Plaintiff's account has been shadow banned and given no specific reason by "X" Support. "Plaintiff's" profile picture of his face was displayed as a female and presently, Plaintiff's profile picture is his e-book cover which shows his face as a male and two other pictures which shows his face as a female. Defendant's transexual daughter has posted Defendant (Elon Musk) is homophobic and trans-phobic and has pointed out she is estranged from her father because of his hatred. Plaintiff believes his account has been shadow-banned due to Defendant's publicly known racism, homophobia and transphobia.

13. On May 30, 2024, Plaintiff upgrade his "X" account by subscribing to "X" Premium which is $22 a month. He joined so his account would have more visibility, ability to post longer texts and post longer videos. His account being shadow-banned did not affect Plaintiff's ability to subscribe to X Premium. Due to Plaintiff being shadow banned, he should not have been able to upgrade his account to obtain the additional benefits that "X" Premium status would give him, but Plaintiff was allowed to subscribe and the account was still shadow banned.

14. On June 29, 2024, Plaintiff paid "X" Ads to promote his e-book, *Mr. President Elliot C. Boose New Edition* and the e-book cover shows Plaintiff's face as a male and two photos of his face cross-dressed as a female. Plaintiff noticed his ad was paused shortly after he paid "X" Ads to promote his e-book. "Plaintiff" received a message from "X" Support which gave false reasons to describe why "X" Ads stopped the promotion of Plaintiff's e-book (See Exhibit I).

15. Defendant (Elon Musk) is known to be racists, homophobic and trans-phobic. Defendant allows racists to post racists slurs, allows MAGA Republicans to post misinformation and Defendant violates his own Terms and Conditions by posting incitement of violence against Democratic political figures.

16. Plaintiff's original "X" account @ElliotBoose2023 which consistently had approximately 150 followers since he opened the account in November 2022 (which were majority either false accounts or bots and more than likely created by "X" administrators) was permanently suspended July 2024, then he created a

17. new "X" account that to present day only has 54 followers (Plaintiff does not know if these followers are bots and false accounts by "X" administrators).

18. Prior to Plaintiff's original "X" account being permanently suspended, he sent "X" Support messages describing "X" Support's discriminating against him and advised he will be pursuing a lawsuit due to "X" Support giving a false reason why Plaintiff was not allowed to buy "X" Ads to promote his e-book. "X" Support much later responded and stated that Plaintiff's ad was not allowed due to violations of Terms of Service but did not specify what the alleged

19. violations were. "X" Support stated the original reason given to not allow the ad (that Plaintiff was selling tickets - which is against "X" Terms and Conditions) was not the reason Plaintiff's ad was not allowed. Then, X Support stated Plaintiff has to create a new account. This was not a solution since a "X" Subscriber has to have a certain number of followers to use "X" Premium and to buy "X" Ads. The solution should have been for "X" Support to simply stop shadow banning Plaintiff's account and allow Plaintiff to buy "X" Ads to promote his e-book which is allowed under "X" Terms and Conditions for a subscriber to promote an "erotic novel". After "X" Support gave that advice that did not fix the problem, Plaintiff's original "X" account was permanently suspended and as a result Plaintiff does not have access to that aforementioned message from "X" Support which gave the other implausible reason why Plaintiff was not allowed to buy an "X" Ad.. However, that message will be able to be accessed during the Discovery process in a lawsuit.

20. An example of the ongoing shadow ban, even on the Plaintiff's new X account, @ecb 4000, Plaintiff's account which as of December 29, 2024 only has 25 followers which seem as if they are fake accounts. The pinned post at the top of the page that promotes his e-book and has video of Plaintiff in

intimate acts with men, since that post has been pinned on his page since July 2024 has 1,759 impressions, however there are no comments from others on the post. It is reasonable to expect numerous comments especially since a description of the e-book which is in the heading of Plaintiff's account that describes the intimate encounter with the celebrity would normally have numerous comments about the ebook and/or the Plaintiff's Onlyfan's website. This is an example of continued shadow ban by the Defendant.

PARTIES

Plaintiff: 1. Elliot Boose ("Plaintiff" or "Boose"") is, and at all times mentioned in this Complaint is, a resident of Gwinnett County, Georgia..

2. Defendants: (a.) Defendant X Corp., doing business in Georgia as X Corp., a Nevada Corporation ("X Corp." or "X") . At all relevant times, Defendant's principal place of business is located at 1355 Market Street, Suite 900, San Francisco, CA 94103. X Corp. owns, operates and controls the social networking service, "X" (formerly referred to and known as Twitter), currently located at www.x.com. The X Platform enables account holders to distribute content via text, images, videos, and other multimedia-based messages. (b.) Defendant Elon Musk ("Musk") is, and at all times mentioned in this Complaint was, a resident of Texas. At the time the representations and promises herein alleged were made, Musk was acting for the benefit of Defendants and within the course and scope of his agency, employment, authority, and/or apparent authority for Defendants.

## JURISDICTION AND VENUE

Georgia Northern District has venue, personal jurisdiction, specific and subject matter jurisdiction since Defendants X Corp and Elon Musk is located in San Francisco, California and does business transactions nationwide and worldwide. The following also applies: Georgia Long-Arm Statute § 9-10-91. Grounds for exercise of personal jurisdiction over nonresident.

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; (4) Owns, uses, or possesses any real property

situated within this state; or (5) With respect to proceedings for alimony, child support, or division of property in connection with an action for divorce or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce.

**FIRST CAUSE OF ACTION**

(Fraud—Against All Defendants, Inclusive)

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 11-20 above.

1. On or about November 2022, and thereafter, the Defendants by and through their employees/servants/agents breached the applicable standard of service by shadow banning Plaintiffs' "X" page and giving Plaintiff false reason why Defendants did not allow Plaintiff to pay "X" Ads to promote his e-book which directly caused financial injury and Plaintiffs' indigence and emotional distress.

2. As a direct result of the Defendants' Fraud and breaches of the applicable standard of service by the Defendant by and through its employees/servants/agents resulting in indigence and emotional distress of the Plaintiff, he has sustained those damages.

Defendants are in violation of Federal Trade Commission Act Section 5: Unfair or Deceptive Acts or Practices.representation, omission, or practice is material. Defendants are in violation of Georgia Long-Arm Statute Ga. Code Ann. § 9-10-9. Defendants are in violation of O.C.G.A. Sections 10-1-390

et seq. ) Making false or misleading statements about another business or its products or services. Defendants false statement that Plaintiff is trying to sell tickets when Defendants' "X" Support knew Plaintiff was selling an e-book (erotic novel) which is allowed per "X" Terms and Conditions. Plaintiff asserts "X" Support is not allowing Plaintiff to pay "X" Ads to promote his e-book because it is gay erotica which is Sex/Gender Discrimination.

**<u>SECOND CAUSE OF ACTION</u>**

(Breach of Contract—Against All Defendants)

The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 11-20 above.

1. On or about November 2022, and thereafter, the Defendants by and through their employees/servants/agents breached the applicable standard of service by shadow banning Plaintiffs' "X" page and giving Plaintiff false reason why Defendants did not allow Plaintiff to pay "X" Ads to promote his e-book which directly caused financial injury and Plaintiffs' indigence and emotional distress.

2. As a direct result of the Defendants' Breach of Contract and breaches of the applicable standard of service by the Defendant by and through its employees/servants/agents resulting in indigence and emotional distress of the Plaintiff, he has sustained those damages.

The allegations set forth in the above paragraphs are re-alleged and incorporated. Plaintiff is damaged as Defendant violated X Terms and Conditions by giving Plaintiff a false reason for denying him the ability to use his X Premium account to buy ads on X to promote his e-book potentially preventing Plaintiff from earning millions in revenue especially since his e-book describes an intimate encounter Plaintiff had with a celebrity. X Terms and Conditions allows subscribers to pay X Ads to promote erotic novels. Plaintiff believes Defendant is not allowing Plaintiff to pay X Ads to promote his e-book because Defendant is openly racists, homophobic and trans-phobic. Plaintiff asserts Defendants' "X" Terms and Conditions are unfair , does not allow for collective bargaining and provisions heavily favor the Defendant as opposed to the Plaintiff which negates the enforce-ability of Defendants' Terms and Conditions. In addition, the unenforceable contract based on the aforementioned reasons, Defendants breached this contract and the following

Georgia Codes are relevant to this transaction. Rescission: A rescission restores the parties as far as is possible to their original position before entering into the contract, e.g., for non-performance (O. C. G. A. § 13–4–62). Rescission is an equitable remedy; the injured party must be able and willing to restore what he has received under it, e.g., for fraud (O. C. G. A. § 13–4–60).

Damages: Here, the court determines that there is quantifiable loss and seeks to put the claimants in the position they would have been if the contract was executed. Thus, damages are compensatory, rather than punitive (O. C. G. A. § 13–6–1). The award of damages depends on whether the contract is entire or severable per O. C. G. A. § 13–1–8. In the former, the court awards damages as a lump remedy, while in the latter the suit and remedy fall under separate legal actions (O. C. G. A. § 13–6–14). Specific Performance: The injured parties seek a court order compelling the reneging party to fulfill their contractual obligations. Here, the injured party has proven that an equitable remedy (rescission) or the award of damages would be inadequate.

**THIRD CAUSE OF ACTION**

(False Advertisement — Against All Defendants)

The Plaintiff re-allege and incorporate by reference herein all of the allegations contained in paragraphs 11-20 above.

On or about November 2022, and thereafter, the Defendants by and through their employees/servants/agents breached the applicable standard of service by shadow banning Plaintiffs' "X" page and giving Plaintiff false reason why Defendants did not allow Plaintiff to pay "X" Ads to promote his e-book which directly caused financial injury and Plaintiffs' indigence and emotional distress.

As a direct result of the Defendants' Fraud and breaches of the applicable standard of service by the Defendant by and through its employees / servants/ agents resulting in indigence, homelessness and emotional distress of the Plaintiff, he has sustained those damages.

The allegations set forth in the above paragraphs are re-alleged and incorporated. Plaintiff is damaged as Defendant has shadow-banned Plaintiff since November 2022 which prevents engagement with other X subscribers which has prevented Plaintiff from passively promoting his e-book which

description is pinned at the top of his X page. Defendant has also kept Plaintiff's X account shadow banned after Plaintiff paid $22 a month to upgrade his X account to X Premium and prevented Plaintiff from paying to promote his e-book which contains homosexual content. Defendant has openly expressed his racism, homophobia and trans-phobia on his own X account and Defendant routinely violates X Terms and Conditions by allowing racists to post racists slurs, allows Republicans to post lies, has posted incitement of violence against Democrat politicians, has allowed Republicans like Donald Trump to violate Terms and Conditions by posting hate speech against celebrities who support Democrats, allows posting of minors committing crimes and allows porn without verification of age of obvious under-age participants.

Plaintiff is damaged due to Defendants' False Advertisement (Plaintiff blocked from promoting gay themed e book using X Ads) which was motivated by Defendants' Sex/race/gender Discrimination which is in violation of Section 1 of the Fourteenth Amendment Equal Protection.

*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein*

*they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

The following case shows the 14th Amendment Section 1 used against a private business. The Court also handled a number of cases dealing with racial discrimination by private actors. In Shelley v. Kraemer, 334 U.S. 1 (1948), the Supreme Court decided that the judicial enforcement of a private restrictive covenant that prohibited non-white occupants violated equal protection to a Black buyer, even though enforcing private restrictive covenants was generally valid and enforceable.

Plaintiff asserts Defendants' homophobia, transphobia and racism which Defendant has routinely publicly expressed has resulted in Plaintiff being discriminated against due to Defendants violating its own Terms and Conditions by not allowing Plaintiff to buy "X" Ads to promote his e-book which has elements of gay erotica and shadow banning Plaintiff's "X" account preventing

other "X" subscribers from engaging with Plaintiff's "X" page which has a pinned post that promotes Plaintiff's e book in a pinned post. This shadow banning has resulted in no sales of his e book for over one year despite Plaintiff having the advertisement of his e-book pinned at the top of the page which broadcasts the description of the e-book which describes a gay intimate encounter with a celebrity. Defendants' refusal to allow Plaintiff to buy an "X" Ad to promote his e-book and shadow banning Plaintiff's "X" account deprives Plaintiff liberty and equal protection of the laws which is a violation of Section 1 of the Fourteenth Amendment Equal Protection Clause and has resulted in Plaintiff being indigent, homeless and emotionally distressed since Plaintiff has had to live in his car, rooming houses and hotels since February 2023. Plaintiff also had to sell expensive belongings including his car as a result.

Plaintiff asserts Defendants violated Plaintiff's 1st Amendment by shadow banning his "X" account which prevents other "X" subscribers from engaging with his page on "X" and blocking Plaintiff from promoting his gay/transexual e-book. Plaintiff repeats his assertion that Defendants' public homophobia, trans-phobia and racism is the real reason Defendant has shadow banned his "X" account, permanently suspended his account in retaliation after Plaintiff

threatened "X" Support with a lawsuit and prevented Plaintiff from buying an ad to promote his gay themed e-book. The following is a case example that used similar First Amendment claims regarding blocking subscribers on social media from posting information. Knight First Amendment Institute v. Trump (2019):

This case addressed whether public officials could block individuals on social media without violating the First Amendment. The Second Circuit Court of Appeals held that President Trump's Twitter account constituted a public forum, and blocking users based on their viewpoints amounted to unconstitutional viewpoint discrimination. These cases illustrate the evolving intersection of free speech and social media in our society. As technology continues to shape the way we communicate and express ourselves, the principles established in these cases will continue to guide the boundaries of free expression online. The First Amendment remains a powerful protector ofour rights in the digital age, reminding us of the enduring importance of free speech in a vibrant democracy. Gold Lawyers. Important First Amendment Cases Involving Social Media. (n.d.).

Defendants are in violation of **O.C.G.A. Sections 10-1-390 et seq.** ) Making false or misleading statements about another business or its products or services. Defendants false statement that Plaintiff is trying to sell tickets when Defendants' "X" Support knew Plaintiff was selling an e-book (erotic novel) which is allowed per "X" Terms and Conditions. Plaintiff asserts "X" Support is not allowing Plaintiff to pay "X" Ads to promote his e-book because it is gay erotica.

Defendants are in violation of Fair Trade Commission Act Section 5(a): This section prohibits "unfair or deceptive acts or practices in or affecting commerce." An act, representation, or omission is *deceptive* when it is likely to mislead a consumer. To establish a violation of Section 5(a), the consumer's interpretation of the misleading misrepresentation must be reasonable, and the fact at issue must be "material," or important enough to matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Elliot Boose, prays for judgment as follows on all causes of action:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For punitive damages, according to proof;
4. For pre-judgment and post-judgment interest on all damages awarded;
5. For reasonable attorneys' fees;
6. For costs of suits incurred;
7. For declaratory relief in the following manner:
8. For injunctive relief by removing suspension/shadow ban and allow Plaintiff to buy ads to promote e-book;
9. For equitable relief; and
10. For such other and further relief as the Court may deem just and proper.

DEMAND FOR JURY TRIAL ADDITIONALLY, Plaintiff, Elliot Boose, hereby demands a jury trial on the causes of action set forth herein. The amount demanded exceeds $2,000,000.00 which is a reasonable expectation or revenue

Plaintiff would have obtained by selling his e-book on Defendants' "X" social media platform.

Dated: January 19, 2025

Respectfully submitted,

Elliot Boose pro se
casray1974@yahoo.com
5375 Peachtree Industrial BLVD
Peachtree Corners, GA 30092
678-650-3285

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff is mailing document to the Georgia Northern District Clerk of Court on January 21, 2025 and sent a copy on January 19, 2025 to Defendants via email to:

SHOOK, HARDY & BACON LLP /s/ Colin K. Kelly Colin K. Kelly Georgia Bar No. 781072 ckelly@shb.com Nia S. Wilson Georgia Bar No. 914011 nwilson@shb.com 1230 Peachtree Street NE Suite 1200 Atlanta, Georgia 30309-3591 (470) 867-6000 (phone)

WILLENKEN LLP /s/ Kenneth M. Trujillo-Jamison Kenneth M. Trujillo-Jamison (pro hac vice admission pending) California Bar No. 280212 ktrujillo-jamison@willenken.com 707 Wilshire Blvd., Suite 3850 Los Angeles, CA 90017 (213) 955-9240 (phone) C Counsel for Elon Musk and X Corp.

Plaintiff had completed this Amended Complaint on Dec 30th 2024, but mistakingly omitted this file when Plaintiff took the other motions to the Georgia Northern District on Dec 31, 2024.

DocuSigned by:
Elliot Boose
89023AF28F7A4AE...

Elliot Boose pro se

ELLiOT BOOSE
5375 PEACHTREE INDUSTRIAL BLVD
NORCROSS, GA 30092




CLEARED DATE
FEB 20 2025
U.S. Marshals Service
Atlanta, GA 30303

Richard B. RUSSELL FEDERAL BUILDING
CASE # 1:24-cv-05650-TRJ
75 TED TURNER Dr SW
ATLANTA, GA 30303