FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 20 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ELLIOT BOOSE, <br><br> Plaintiff, <br><br> v. <br><br> ELON MUSK: X CORP. DOING BUSINESS IN GEORGIA AS X CORP., A NEVADA CORPORATION <br><br> Defendants. | Civil Action No. 1:24-cv-05650-TRJ |

## PLAINTIFF'S SECOND OPPOSITION REPLY TO DEFENDANT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(5), AND 12(b)

Elliot Boose ("Plaintiff") filed Complaint against Elon Musk and X Corp ("Defendants").

Plaintiff re-asserts Defendant responded to Plaintiff's complaint and Defendant also moved the case from Gwinnett County Superior Court to Georgia Northern District. Since Defendant responded on the last day Plaintiff's Default Judgement deadline, Defendant';s claim

is moot since he responded. Plaintiff reasserts that Gwinnett County Superior Court clerk is required to send pro se and indigent's Complaint to the Defendant and failed to do so and the clerk also failed to advise Plaintiff that the clerk did not send Defendant the Summons and the Complaint. Regardless, Plaintiff made several attempts to verify if Defendant's agent received the mailed Complaint and that agent refused to respond to Plaintiff. As a result, Plaintiff mailed the Complaint to Defendant's place of business. "(m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1) or to service of a notice under Rule 71.1(d)(3)(A)." Since Plaintiff has shown "good cause for the failure", Plaintiff requests the court extend the time for service.

Plaintiff reasserts that Gwinnett County Georgia and Georgia Northern District both have jurisdiction under Georgia's Long Arm Act since Defendant operates in every state and the statute does not require the Defendant to be physically present in each state to do business.   E-

commerce cases, courts evaluate whether a non-resident defendant has purposefully directed activities at Georgia residents through interactive websites or targeted online advertising. The interactivity and commercial nature of the website are key factors. For example, websites allowing Georgia residents to purchase goods or services may establish sufficient jurisdictional contacts, whereas passive sites providing only information typically do not.

The Zippo Manufacturing Co. v. Zippo Dot Com, Inc. case, though not from Georgia, has influenced how courts nationwide, including Georgia, analyze internet-based jurisdiction. Using the "Zippo sliding scale" test, courts categorize websites by their interactivity level to determine whether online activities justify jurisdiction over non-resident defendants. Civil Rights Law. (2025, Jan 2). *Understanding Georgia's Long Arm Statute: Jurisdiction & Cases.* https://legalclarity.org/understanding-georgias-long-arm-statute-jurisdiction-cases/

Plaintiff reasserts that portions of X Governing Terms are unfair and unconscionable by limiting Defendant's liability since it is the Defendant's racists, homophobic and trans-phobic actions are all direct reasons why Plaintiff was refused the ability to buy an ad on X due to Defendant's racism, homophobia and trans-phobia. In other words,

Defendant cannot hide behind unfair and unconscionable Governing Terms and Conditions when the Defendant uses it to discriminate against protected classes whom of which he has stated publicly that he is against. It is blatant FRAUD. Defendant mentions First Amendment, but Defendant is the one violating Plaintiff's First Amendment rights to pay to promote his e book which has gay and bi-sexual content. Section 230 does not protect social media sites from discriminating against subscribers who are members of protected classes.

Defendant's actions towards Plaintiff is Fraud, Discriminatory to protected classes and False Advertising which is not protected by Section 230. Section 230(c)(2) states that providers are not liable for "any action voluntarily taken in good faith to restrict access to or availability of" objectionable content. Plaintiff asserts Defendant's refusal to allow Plaintiff to buy an ad on X is not an "act of good faith to restrict access to or availability of objectionable content." Defendant's actions are instead Fraud, Discriminatory and False advertising.

Section 230 has two main provisions: (c)(1) and (c)(2). First, (c)(1) states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."1 In practice, this means online services are not liable for defamatory or otherwise unlawful content their

"any action voluntarily taken in good faith to restrict access to or availability of" objectionable content.2 This second provision enables providers to engage in content moderation and enforce their community standards.

When determining whether Section 230 applies to a specific case, courts use a three-pronged liability test. First, the defendant must be a "provider or user of an interactive computer service." An interactive computer service, as defined by the law, "provides or enables computer access by multiple users to a computer server." Second, the defendant must not be an "information content provider," or a "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet." Finally, the plaintiff's claim must treat the defendant as the "publisher or speaker" of the content in question.3 If a case meets all three requirements, Section 230 applies, and the defendant is not liable.

Section 230 does not shield online services from liability for intellectual property violations. A separate law, the Digital Millennium Copyright Act (1998), addresses the issue of copyright infringement on the Internet. Section 230 also does not shield online services from facing criminal liability for breaking the law. Information Technology & Innovative Foundation. (2021, Feb 2022). The Exceptions to Section

230: How Have the Courts Interpreted Section 230?

https://itif.org/publications/2021/02/22/exceptions-section-230-how-have-courts-interpreted-section-230/

Due Process Clause and Specific/Personal jurisdiction does not prevent Defendant from procecution. Plaintiff does not have access to the specific number of Georgia residents who use Defendant's X platform, however, this information will be requested from the Defendant during the Discovery process.

**The Supreme Court's jurisprudence addressing the doctrine of personal jurisdiction as applied in state courts spans a period of American history that has witnessed a significant expansion of interstate and global commerce, as well as major technological advancements in transportation and communication.[15] These changes produced a fundamental shift in the Court's views concerning the doctrine.[16] Although the Court initially considered the defendant's physical presence within the forum state to be the touchstone of the exercise of personal jurisdiction over him or her,[17] it later rejected strict adherence to this rule in favor of a more flexible standard that examines a nonresident defendant's contacts with the forum state to determine whether those contacts make it reasonable to require him to respond to a lawsuit there.[18]**

The Supreme Court's opinions in International Shoe Co. v. Washington and subsequent cases have established a two-part test for determining when a state court's exercise of personal jurisdiction over each nonresident defendant sued by a plaintiff comports with due process: (1) the defendant must have established minimum contacts with the forum state that demonstrate an intent to avail itself of the benefits and protections of state law; and (2) it must be reasonable to require the defendant to defend the lawsuit in the forum.[19] Since that fundamental shift, much of the Court's jurisprudence addressing the limits that the Constitution places on state courts' exercise of personal jurisdiction has addressed the quality and nature of the "minimum contacts" among the defendant, the forum, and litigation that the Constitution requires before a court may exercise jurisdiction over the defendant.[20] Questions over personal jurisdiction have become one of the most frequent constitutional issues resolved by lower federal courts,[21] and are the basis for a dismissal of complaints in a considerable number of cases lodged in both federal and state court.[22]

When determining whether a defendant has minimum contacts with the court in which the action is initially filed, the Court has distinguished the types of contacts sufficient for a court's exercise of "general" personal jurisdiction over the defendant from those

jurisdiction. A court's exercise of specific jurisdiction may be constitutional when the defendant has contacts with the forum that give rise to, or are related to, the plaintiff's cause of action (e.g., an act or occurrence caused by the defendant that takes place in the forum or has an impact there).[23] By contrast, a court's exercise of general jurisdiction over a nonresident defendant for any claim—even if all the incidents underlying the claim occurred in a different state—may be constitutional when the defendant's activities in the forum state are so substantial that it is reasonable to require it to defend a lawsuit that did not arise out of its activities in the forum state and is unrelated to those activities.[24] In more recent years, the Court has significantly limited the types of activities or affiliations of the defendant in the forum state sufficient for general jurisdiction, holding that those contacts must be so substantial as to render the defendant "essentially at home" in the forum state.[25] The Court has clarified that, absent exceptional circumstances, a corporate defendant is "at home" when it is incorporated in the forum state or maintains its principal place of business there (e.g., the corporation is headquarted in the state).[26]

**Cornell Law School. Legal Information Institute. (n.d).**

**Amdt5.4.7.1.1 Overview of Personal Jurisdiction and Due Process.**

**https://www.law.cornell.edu/constitution-conan/amendment-5/overview-of-personal-jurisdiction-and-due-process**

Plaintiff reasserts his X account has been shadow-banned since the start of his subscription on X. Even though Plaintiff was allowed to subscribe to X, Plaintiff is not being given the same abilities as other subscribers since his previous and new X account are both shadow banned. Again, when Plaintiff started his X account, the intent was to promote his e-book and the Plaintiff's profile picture is the e-book cover which shows Plaintiff's face as a male and a female. Defendant claims there is no evidence of Defendant being homophobic, racists or trans-phobic, however in the same court filing that the Defendant is referring to, Plaintiff posted just a few examples of Defendant's public racism, homophobia and trans-phobia and more evidence of Defendant's bias will be displayed during the Discovery process.

Defendant has "purposely availed [themselves] of the privilege of conducting business within the forum" since X is available in every state and in every country that allows X to be accessed by its citizens. If the Defendant did not "purposely avail [themselves]", X would not be available to citizens in the state of Georgia. Defendant had to purposely allow Georgia citizens to use X just as Defendant purposely allows citizens of every state and country to use X.

Regarding to Defendant's assertion that Plaintiff has failed to state a claim, Plaintiff did state a claim in the original complaint and restated the claim in the proposed Amended Complaint that was omitted

by mistake when filed at court December 31, 2024. The proposed Amended Complaint is being mailed to the court on Jan 21, 2025.

## CONCLUSION

Plaintiff reasserts that Defendant's bias against Plaintiff who is a member of protected classes - race and sexuality, is the reason Defendant committed Fraud, Breach of Contract and False advertising and unjustifiably refused Plaintiff the ability to buy an Ad on X. The Defendant of course cannot state the reason for preventing Plaintiff from buying an X Ad is due to Plaintiff's race and sexuality. Defendant instead gave Plaintiff a false reason stating Plaintiff was not allowed to buy an X Ad (Defendant stated Plaintiff was trying to sell tickets (which is against Defendant's Terms and Conditions). Plaintiff requests Defendant's Motion to Dismiss be DENIED.

Dated: December 30, 2024

Respectfully submitted,

DocuSigned by:
*Elliot Boose*
89023AF28F7A4AE

Elliot Boose pro se

casray1974@yahoo.com

5375 Peachtree Industrial BLVD
Peachtree Corners, GA 30092
678-650-3285

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff is mailing document to the Georgia Northern District Clerk of Court on January 21, 2025 and sent a copy on January 19, 2025 to Defendants via email to:

SHOOK, HARDY & BACON LLP /s/ Colin K. Kelly Colin K. Kelly Georgia Bar No. 781072 ckelly@shb.com Nia S. Wilson Georgia Bar No. 914011 nwilson@shb.com 1230 Peachtree Street NE Suite 1200 Atlanta, Georgia 30309-3591 (470) 867-6000 (phone)

WILLENKEN LLP /s/ Kenneth M. Trujillo-Jamison Kenneth M. Trujillo-Jamison (pro hac vice admission pending) California Bar No. 280212 ktrujillo-jamison@willenken.com 707 Wilshire Blvd., Suite 3850 Los Angeles, CA 90017 (213) 955-9240 (phone) C Counsel for Elon Musk and X Corp.